In Re: )
) **JUDGE RICHARD L. SPEER**
Andrew/Amy Conlee )
) Case No. 10-31243
Debtor(s) )
)

## DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss this case pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). (Doc. No. 14). The Debtors filed a response to the Motion, objecting to the Dismissal of their case. (Doc. No. 19). A Hearing was then held on the matter. At the conclusion of the Hearing, the Court deferred ruling on the Motion to Dismiss so as to afford the opportunity to further consider the evidence and arguments submitted by the Parties. (Doc. No. 20). The Court has now had the opportunity to review all of the arguments and evidence submitted in this case, and finds, for the reasons now explained, that the Motion of the United States Trustee to Dismiss has Merit.

## DISCUSSION

On March 4, 2010, the Debtors, Andrew and Amy Conlee, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). The Debtors also, as required by the Bankruptcy Rules, filed an Official Form B22A, entitled "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation." This form implements the requirement of § 707(b)(2)(C), requiring a debtor to perform the 'means test' calculation of § 707(b)(2) so as to determine if granting relief in the case should be presumed to be an abuse. In completing Form B22A, the Debtors, who represented that they had a combined gross annual income of approximately $84,000.00, determined that no presumption of abuse arose in their case, checking then the applicable box on the Form. (Doc. No. 1).

In re: Andrew and Amy Conlee
Case No. 10-31243

On June 4, 2010, the United States Trustee (hereinafter the "UST") filed the Motion now before the Court to Dismiss this case. In the Motion, the UST took issue with two deductions taken by the Debtors in performing their 'means test' calculation on Form B22A: (1) an ownership expense for transportation in the amount of $340.20 per month; and (2) an expense of $500.00 per month for the repayment of a student-loan debt in the name of the Debtor, Amy Conlee.

For the last expense, the student-loan payment, the evidence before the Court revealed that the obligation was incurred by Mrs. Conlee between 2001-2005 to obtain an associate degree in nursing. The outstanding balance on this loan now stands at approximately $81,000.00, and constitutes 63% of the Debtors' outstanding unsecured debt.

After the UST filed its Motion, the Debtors acknowledged that, under the 'means test' formulation of § 707(b)(2), they were not entitled to take a $500.00 per month deduction for the repayment of their student-loan debt. (Doc. No. 19). Furthermore, the Debtors acknowledged that, once this adjustment was made, the 'means test' calculation of § 707(b)(2) yielded a result showing that the granting of relief in their case should be presumed to be an abuse. *Id.* The Debtors, however, take the position that their Chapter 7 case should not be dismissed, citing to § 707(b)(2)(B) as the basis for their position.

Under § 707(b)(2)(B), if the presumption of abuse arises when performing the 'means test' calculation of § 707(b)(2), it may be rebutted by a debtor demonstrating the existence of "special circumstances." According to the Debtors, Mrs. Conlee's student loan constitutes a "special circumstance," justifying an adjustment to the 'means test' calculation for two reasons: (1) the student loan is nondischargeable, and therefore the Debtors have no reasonable alternative but to pay the obligation; and (2) the student loan constitutes 63% of their unsecured debt, lessening the benefit that any plan of reorganization will confer upon the Debtors' general body of unsecured creditors. (Doc. No. 19).

Page 2

In re: Andrew and Amy Conlee
Case No. 10-31243

Recently, in the case of *In re: Gregory/Jennifer Burggraf*, Case No. 10-32297, the Court was presented with the question of whether the debtors' student-loan obligations constituted a "special circumstances" for purposes of § 707(b)(2)(B)? In a written decision entered by the Court, wherein the issue was addressed in depth, two conclusions were reached.

First, it was determined that expenses associated with a debtor's student-loan debt could not constitute a *per se* "special circumstance" within the meaning of § 707(b)(2)(B)(i). Second, the Court determined that, under the particular circumstances presented in *In re: Gregory/Jennifer Burggraf*, the debtors' repayment of their student loans did not arise to the level of a "special circumstance," justifying an adjustment to the debtors' 'means test' calculation. These same conclusions are equally applicable in this particular matter, with a copy of the Court's decision in *In re: Gregory/Jennifer Burggraf* attached hereto, and made a part of this Decision.

In coming to this conclusion, it is first noted that, when compared with *In re: Gregory/Jennifer Burggraf*, the Debtors did not advance any new arguments concerning the propriety of allowing expenses associated with a student loan to be considered as a *per se* "special circumstance" for purposes of § 707(b)(2)(B). As such, this Court's holding in *In re: Gregory/Jennifer Burggraf*, disallowing any automatic link between student loans and the "special circumstances" contemplated by § 707(b)(2)(B), applies with equal force in the instant case. *See Irby v. Preferred Credit (In re Irby)*, 359 B.R. 859, 861 (2007) (under the doctrine of stare decisis, "a court, in the absence of any intervening change in the law, is to abide by a principle of law laid down in a past decision to a present case having substantially the same facts.").

Similarly, the factual circumstances as they exist in this case are not sufficiently distinguishable from the facts presented in *In re: Gregory/Jennifer Burggraf* so as to warrant a deviation from this Court's prior holding. *See Id.* If anything, the particular facts presented in *In re: Gregory/Jennifer Burggraf* were more favorable, as compared to this case, to a finding that "special circumstances" existed. For example, the amount of the student-loan debt presented in *In re: Gregory/Jennifer Burggraf* constituted approximately three times the debtors' gross annual wages, making its strain on the debtors'

Page 3

In re: Andrew and Amy Conlee
Case No. 10-31243

budget much more acute than in this case where the Debtors' outstanding student loans stand at slightly less than one year of the Debtors' gross salary. The Debtors in this matter are also eligible for Chapter 13 relief, while the debtors in *In re: Gregory/Jennifer Burggraf* were not eligible to be debtors under Chapter 13.

In conclusion, any expense associated with the Debtors' repayment of Mrs. Conlee's student loan does not constitute a "special circumstance" within the meaning of § 707(b)(2)(B). As a consequence, the granting of relief in this case must be presumed to be an abuse within the meaning of § 707(b)(2), with the Court unable to find any fault with the Debtors' calculation under the 'means test,' which shows that they have the ability to repay at least a portion of their debts. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss, be, and is hereby, GRANTED.

**IT IS FURTHER ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Friday, August 27, 2010, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

Dated: August 11, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

In Re:                                        )
                                              )      **JUDGE RICHARD L. SPEER**
Gregory/Jennifer Burggraf                     )
                                              )      Case No. 10-32297
        Debtor(s)                             )
                                              )
                                              )

## DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss this case pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). (Doc. No. 17). The Debtors filed a response to the Motion, objecting to the Dismissal of their case. (Doc. No. 23). A Hearing was then held on the matter. At the conclusion of the Hearing, the Court deferred ruling on the Motion to Dismiss so as to afford the opportunity to further consider the evidence and arguments submitted by the Parties. (Doc. No. 22). The Court has now had the opportunity to review all of the arguments and evidence submitted in this case, and finds, for the reasons now explained, that the Motion of the United States Trustee to Dismiss has Merit.

## DISCUSSION

On April 7, 2010, the Debtors, Gregory and Jennifer Burggraf, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. By filing a petition for relief under Chapter 7 of the Code, the Debtors are seeking "an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." *Schultz v. U.S.*, 529 F.3d 343, 346 (6th Cir. 2008). This is in contrast to a bankruptcy brought by an individual under Chapter 11 or 13 of the Code through which debtors, based on a plan subject to approval by the court, propose to repay all or a portion of their debts from their assets or future earnings over a period of time, with a discharge then being entered upon the debtor's successful completion of the plan.

In re: Gregory/Jennifer Burggraf
Case No. 10-32297

In any case, the relief provided by the Bankruptcy Code is a legislatively created benefit, not a constitutional right. *United States v. Kras*, 409 U.S. 434, 445-446, 93 S.Ct. 631, 637-638, 34 L.Ed.2d 626 (1973). Therefore, no matter the Chapter of the Code, Congress may place reasonable restrictions on an individual's ability to obtain bankruptcy relief. To that end, Congress has prescribed conditions under which a debtor's bankruptcy case must be dismissed. *In re AC Rentals, Inc.*, 325 B.R. 339 (10th Cir. B.A.P. 2005). When, as here, a debtor seeks relief under Chapter 7 of the Bankruptcy Code, the conditions mandating dismissal are set forth in § 707, with the Motion to Dismiss filed by UST relying on the conditions set forth in subsection (b).

Section 707(b)(1) provides that the bankruptcy case of an individual debtor whose debts are primarily consumer debts may be dismissed if the court finds, after notice and a hearing, that granting a discharge would be an abuse of the provisions of Chapter 7 of the Bankruptcy Code. Two methods are then prescribed in § 707(b) to assess whether "abuse" is present: (1) presumed abuse under the objective 'means test' set forth in § 707(b)(2); and (2) a subjective test, found in § 707(b)(3) which considers whether the debtor filed their petition in bad faith and whether the totality of the circumstances surrounding the debtor's financial situation demonstrate abuse.

The first of the methodologies, the 'means test' formula of § 707(b)(2), represents the embodiment of the Congressional policy that debtors with the ability to repay their debts be required to do so and "that there be an easily applied formula for determining when the Court should presume that a debtor is abusing the system by filing a Chapter 7 petition." *In re Fowler*, 349 B.R. 414, 419 (Bankr. D.Del. 2006). It is purely an objective test, and was intended to eliminate judicial discretion regarding determinations of abuse under § 707(b)(1). *In re Sullivan*, 370 B.R. 314, 318 (Bankr. D.Mont. 2007). Its actual reach, however, is limited to only a certain segment of debtors: those with income above the state median income for a household of the same size. 11 U.S.C. § 707(b)(7).

Page 2

In re: Gregory/Jennifer Burggraf
Case No. 10-32297

Although very detailed in its operation, the 'means test' formula of § 707(b)(2) is conceptually simple. One first determines a debtor's income and then reduces that amount by those expenses permitted in the statute. 11 U.S.C. § 707(b)(2)(A). If, after performing this calculation, the debtor's remaining income, as calculated over a five-year period, satisfies one of two conditions, the granting of relief in the case is then presumed to be abusive: (1) the debtor's income is greater than $11,725.00; or (2) although less than $11,725.00, the debtor's income is greater than $7,025.00 and that amount will pay more than 25% of the debtor's unsecured debt. On a per month basis, these income thresholds total $195.42 and $117.08 respectively.

At the Hearing held on the Motion of the UST to Dismiss, the Debtors, who have one minor child, acknowledged that their annual income exceeded the applicable state median income for a household of the same size, thus requiring them to perform the 'means test' calculation of § 707(b)(2). In terms of specific numbers, the Debtors, at the time they sought bankruptcy relief, reported a combined annual income of $105,816.12, with the lesser amount of $61,552.00[1] constituting the applicable median income for a family of three in the state of Ohio. At the Hearing on Dismissal, the Debtors also stipulated that, according to the 'means test' formula of § 707(b)(2), a presumption arises that granting them relief under Chapter 7 of the Bankruptcy Code would be an abuse. (Doc. No. 23, ¶ 2).

Upon review, the Court, as an evidentiary matter, can find no fault with the Debtors' calculation under the 'means test,' showing that a presumption of abuse arises for purposes of § 707(b)(2). Under this circumstance, the Bankruptcy Code provides for the dismissal of their case

---

[1] http://www.justice.gov/ust/eo/bapcpa/20100315/bci_data/median_income_table.htm.

Page 3

In re: Gregory/Jennifer Burggraf
Case No. 10-32297

unless the presumption can be rebutted. *See, e.g., In re Haman*, 366 B.R. 307, 311 (Bankr. D.Del. 2007).[2]

Section § 707(b)(2)(B) sets forth the exclusive method by which a debtor may rebut a presumption of abuse which arises based upon the 'means test' calculation. The debtor bears the burden to show to the satisfaction of the court that the requirements of § 707(b)(2)(B) have been met. *In re Fonash*, 401 B.R. 143, 147 (Bank. M.D.Pa. 2008). The requirements of § 707(b)(2)(B) are both substantive and procedural in character.

First, as a substantive matter, § 707(b)(2)(B) provides:

> (i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

In addition, as a matter of procedure, § 707(b)(2)(B) requires a debtor to "itemize each additional expense or adjustment of income and . . . provide (I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable." 11 U.S.C. § 707(b)(2)(B)(ii). Additionally, a debtor

---

2

In their brief to the Court, the Debtors contend that there "is a statutory presumption in favor of granting the relief sought by Chapter 7 debtor." (Doc. No. 23, ¶ 5). While this at one time was true, it is not an accurate statement today. In 2005, when Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act, the statutory presumption in favor of granting relief to the debtor was deleted from the Code. Furthermore, this Act created the 'means test' of § 707(b)(2), which goes further by providing conditions under which a presumption may arise against granting a debtor a discharge.

Page 4

In re: Gregory/Jennifer Burggraf
Case No. 10-32297

must "attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required." 11 U.S.C. § 707(b)(2)(B)(iii).

In this matter, the application of the substantive portion of § 707(b)(2)(B) is dispositive as to the merits of the Parties' respective positions. Under the substantive portion of § 707(b)(2)(B)(i), a debtor, to rebut a presumption of abuse, must demonstrate two elements: (1) the existence of 'special circumstances' which justify the allowance of an additional expense or adjustment to income; and (2) the lack of any 'reasonable alternative' for making the adjustment. For the first element, the Debtors called attention to what can be construed as two conditions which give rise to 'special circumstances.'

First, the Debtors pointed to their aggregate unsecured debt, which they estimated to be $450,000.00. Based on this amount, the Debtors explained that, although they would have preferred to repay their creditors, they are not eligible to formulate a repayment plan under Chapter 13 of the Code, with their unsecured debt exceeding the statutory cap for eligibility under that Chapter of the Code. *See* 11 U.S.C. § 109(e).[3]

But, as their primary basis for a finding of 'special circumstances,' the Debtors pointed to their large amount of student-loan debt, an amount they approximate to be $350,000.00. According to the Debtors, under a hypothetical plan of reorganization, it would be questionable whether they could even sustain interest payments on this debt. As a result, the Debtors point out that, because student-loan obligations are nondischargeable in bankruptcy, the principal balance on their

---

[3]In relevant part, this provision provides:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $360,475 . . . may be a debtor under chapter 13 of this title.

Page 5

In re: Gregory/Jennifer Burggraf
Case No. 10-32297

educational loans could potentially increase during the life of any plan, leaving them in a worse position at the end of their plan. The Debtors further contend that because their student loans constitute the lion's share of their unsecured debt, any pro-rata distribution to their general body of unsecured creditors would be minimal. Each of this points will be addressed.

The Bankruptcy Code does not specifically define what constitutes a "special circumstance" as applied to § 707(b)(2)(B)(i). This provision, however, does provide two examples: (1) a serious medical condition; or (2) a call to active duty in the Armed Forces. Although these conditions are not exclusive, this Court – applying the statutory interpretation canon of *ejusdem generis*, meaning literally "of the same kind," – has found that a condition giving rise to a "special circumstance" should be similar in nature and have characteristics similar to the examples provided in § 707(b)(2)(B)(i). *In re Castle*, 362 B.R. 846, 851 (Bankr. N.D.Ohio 2006). To this end, this Court has observed that the examples in § 707(b)(2)(B)(i) "do show a commonality [in that] they both constitute situations which not only put a strain on a debtor's household budget, but they arise from circumstances normally beyond the debtor's control. *Id.*

This is in line with jurisprudence formulated by the Sixth Circuit Court of Appeals. In the case of *In re Krohn*, the Sixth Circuit, when addressing the propriety of dismissing a case under § 707(b), observed that a bankruptcy court should consider whether the debtor "was forced into Chapter 7 by unforeseen or catastrophic events." 886 F.2d 123, 126 (6th Cir. 1989). *See also In re Haman*, 366 B.R. 307, 314 (Bankr. D.Del. 2007) (expenses incurred merely at debtor's discretion are not a 'special circumstances; rather, there should exist no reasonable alternative but to incur the expense).

Notwithstanding, nothing in § 707(b)(2)(B)(i) absolutely requires that a 'special circumstance' arise as the result of an event beyond the debtor's reasonable control. Thus, the Court will not read into § 707(b)(2)(B)(i) an involuntariness prerequisite. At the very least, however, it may

Page 6

In re: Gregory/Jennifer Burggraf
Case No. 10-32297

be safely stated that a debtor who requests a finding of "special circumstances" seeks preferential treatment over other similarly situated debtors. *In re Stocker*, 399 B.R. 522, 531-32 (Bankr. M.D.Fla. 2008), citing S. Rep. No. 106-49, at 6-7 (1999).

Thus, it follows that, where the circumstances are not involuntary, the "special circumstances" contemplated by § 707(b)(2)(B)(i) must be highly unusual, and of the type not normally encountered by most debtors. As stated by one bankruptcy court:

> Both a reading of the plain unambiguous language of 11 U.S.C. Section 707(b)(2)(B) and the BAPCPA legislative history lead to the same result: A debtor asserting "special circumstances" in support of additional expenses or income adjustment must establish the circumstances are extraordinary or exceptional, are unexpected or involuntary, and place the debtor in dire need of Chapter 7 relief.

*In re Stocker*, 399 B.R. at 532. In the end, however, any inquiry concerning the existence of 'special circumstances' is ultimately dependent on the particular facts of each debtor's situation, and thus must be conducted on a case-by-case basis. *See, e.g., In re Vaccariello*, 375 B.R. 809, 813; *In re Siler*, 426 B.R. 167, 172-173 (Bankr. W.D.N.C. 2010); *In re Champagne*, 389 B.R. 191, 200 (Bankr. D.Kan. 2008).

### Student Loans

Looking first at the Debtors' student loans, two facts become immediately apparent: First, the Debtors incurred their student-loan debt over a long period of time. Second, the Debtors, particularly Mrs. Burggraf who is responsible for most of the student-loan debt, continued to incur student-loans leading up to the time she filed for bankruptcy relief.

The Debtors' student-loan debt, thus, stems not from unforseen circumstances or from events beyond their reasonable control. Instead, having been incurred in increments over a substantial period

Page 7

In re: Gregory/Jennifer Burggraf
Case No. 10-32297

of time, the Debtors' student-loans were incurred in a deliberate manner, with the Debtors being afforded ample opportunity to reflect on their decision to continue to incur more debt. Yet despite making the conscious decision to go deeper and deeper into debt, the Debtors now seek to use their student-loan obligations as a factor mitigating in favor of a finding of "special circumstances," a use which strikes this Court as inconsistent with the whole notion of a 'special circumstance.'

It also cannot be ignored that the Debtors have a meaningful level of income, with the evidence showing that the Debtors have and will likely continue to have an annual income in excess of $100,000.00. On this point, it also did not go unnoticed that the Debtors' present financial structure does allow them, albeit not always easily, to service their student-loan debts. By seeking to proceed with a Chapter 7, therefore, the Debtors are attempting to pay their student-loan obligations at the expense of their other unsecured creditors, a result which, although not absolutely prohibited, can hardly be countenanced. *See Chase Manhattan Mortgage Corp. v. Shapiro, Trustee (In re Lee)*, 530 F.3d 458, 463 (6th Cir. 2008) (one of the primary goals of the Bankruptcy Code is to foster equality of distribution among creditors).

To be sure, there does exist an unignorable reality. The Debtors' educational debt is very large and constitutes a significant percentage of their overall unsecured debt. Hence, under any plan of reorganization proposed by the Debtors, the pro-rata return to their general body of unsecured creditors would be significantly diminished. This type of situation, where the ratio of educational debt to the remaining unsecured debt is very high, has been previously addressed by the Court in the context of a § 707(b) action.

In the case of *In re Thurston*,[4] this Court permitted a debtor to accord preferential treatment, in her budget, to her student-loan obligations where the debtor's total unsecured debt totaled

---

[4] Case No. 07-35092, 2008 WL 3414138, at *5 (Bankr. N.D.Ohio 2008).

Page 8

In re: Gregory/Jennifer Burggraf
Case No. 10-32297

$180,000, of which $160,000, or almost 90%, constituted student-loan debt. In coming to this conclusion, this Court relied on the fact that little benefit would inure under a plan of reorganization to the debtor's non-student loan creditors while causing the debtor a great deal of harm if interest accruing on the student loans were continue to be folded into the loans' principal.

Yet, while the Debtors' situation is outwardly similar, the facts of *In re Thurston* are sufficiently distinguishable so as to make its approach inapplicable in this case. First, the Debtors' student-loan debt in this case only comprises approximately three-quarters of their total debt, not the near 90% encountered in *In re Thurston*. Accordingly, under a plan of reorganization, any pro-rata distribution to the Debtors' general body of unsecured creditors would be more than a *de minimus* amount as compared to the student loans. Secondly, this Court's analysis in *In re Thurston* was predicated on the propriety of dismissing a case under § 707(b)(3), based upon the totality of the debtor's financial circumstances, not whether, as here, if "special circumstances" exist. In this regard, a totality of the circumstances approach under § 707(b)(3) allows the Court much more flexibility than a determination concerning the existence of "special circumstances" under § 707(b)(2)(B)(i). *In re Haman*, 366 B.R. at 315.

In support of proceeding with their Chapter 7 case, the Debtors also took a different tack regarding their student loans, advocating that, notwithstanding their particular circumstances, student loans, being nondischargeable debts, should be deemed on that basis alone to constitute a "special circumstance" within the meaning of § 707(b)(2)(B). Simply put, the Debtors argued that payments on student loans should automatically be deemed to constitute "special circumstances." The Court, however, must decline the Debtors' invitation to adopt a *per se* approach, whereby all expenses associated with a student-loan debt should be deemed to constitute a "special circumstance" within the meaning of § 707(b)(2)(B)(i). *See In re Carrillo*, 421 B.R. 540, 546 (Bankr. D.Ariz. 2009).

Page 9

In re: Gregory/Jennifer Burggraf
Case No. 10-32297

To begin with, among debtors who seek bankruptcy relief, student loans are commonplace. As a consequence, such loans hardly rise to the level of an unusual, extraordinary or exceptional circumstance, necessitating that a debtor automatically be afforded preferential treatment when it comes to the application of the § 707(b)(2) 'means test.'

Additionally, the omission of student loans from the two exemplars provided in § 707(b)(2)(B)(i) is not necessarily fortuitous. In enacting bankruptcy law, Congress knew how to address the issue of student loans, specifically providing that such loans are not subject to discharge under § 523(a)(8). Yet, in enacting § 707(b)(2), Congress remained silent on this type of debt, raising the question: if Congress had intended for student loans to constitute a *per se* "special circumstance," why didn't it do so?

Not all courts have followed this approach, largely on the basis that, because student loans are nondischargeable, the debtor has no realistic option but to pay the debt. *See In re Womer*, 427 B.R. 334, 336 (Bankr. M.D.Pa. 2010) (collecting cases). The Court, however, respectively disagrees with such an approach, finding that it has a logical inconsistency.

First, other debts under the Bankruptcy Code are nondischargeable, and thus, like student loans, presumably have to be repaid. Such debts can include those relating to fraud (§ 523(a)(2)), willful and malicious injury to a person or property (§ 523(a)(6)), and death or personal injury resulting from the operation of a motor vehicle while intoxicated (§ 523(a)(9)). *In re Vaccariello*, 375 B.R. 809, 815 (Bankr. N.D.Ohio 2007). However, one would hardly make the argument that the repayment of these types of nondischargeable debts would constitute a 'special circumstance,' warranting an adjustment to a debtor's expenses under the 'means test.'

Debtors with large student loan obligations also have other options available to address their needs, thereby ameliorating the lack of any viable alternatives when it comes to repaying the debt.

Page 10

In re: Gregory/Jennifer Burggraf
Case No. 10-32297

For example, Congress just recently implemented the Income Based Repayment Program. 20 U.S.C. § 1098e. Explained in very general terms, if one participates in this program their required payments on an outstanding student loan are limited to 15% of the debtor's adjusted gross income that exceeds 150% of the applicable poverty line. The amount of monthly payment due on a student loan could thus be minimal. Furthermore, if any balance remains on the loan after 25 years, that portion of the debt is forgiven.

In sum, the Court is not persuaded that the Debtors' large student-loan obligations qualify as a 'special circumstance' for purposes of § 707(b)(2)(B)(i). As such, the cost incurred by the Debtors to service their student loans does not justify the allowance of an additional expense when performing the "means test" calculation of § 707(b)(2)(B)

### Ineligibility for Chapter 13 relief

The Debtors' second point, in support of allowing them to claim "special circumstances" under § 707(b)(2)(B), concerns their ineligibility for relief under Chapter 13 of the Code. According to the Debtors, this circumstance constitutes a 'special circumstance' because to hold otherwise would effectively operate to deny them relief under the Bankruptcy Code. The Court, however, while realizing that the Debtors are probably correct in their assertion that Chapter 13 relief is not available, is not persuaded that this fact constitutes a 'special circumstance' for purposes of this case. The first reason for this is policy.

Consistent with the Sixth Circuit's decision's in *In re Krohn*, the Court is unwilling to reward debtors who pile on debt, while punishing debtors who are more frugal with their finances. In *In re Krohn* the Court remarked:

> debtor's eligibility for Chapter 13 relief should be considered in ascertaining
> his ability to repay his debts out of future earnings. However, inability to

Page 11

>qualify under Chapter 13 should not be dispositive of whether there may be a § 707(b) dismissal, since there are other factors to be considered in deciding if a debtor is needy. The anomalous result of saying those whose high unsecured indebtedness renders them ineligible for Chapter 13 treatment can always avoid § 707(b) dismissal, would be rewarding outrageous abusers of consumer credit, while denying to those with more moderate consumer debt the benefits of Chapter 7. Indeed, such a bright-line test could be said to encourage debtors to run up unsecured debts in excess of $100,000, thereby avoiding dedication of future earnings to debt retirement under Chapter 13.

While it is true that in *In re Krohn* was decided in a slightly different context, concerning whether the circumstances of a case demonstrated substantial abuse under the former § 707(b), the Court can discern no reason why its observations would not apply equally to the revised version of the statute and whether "special circumstances" exist in a case for purposes of § 707(b)(2)(B)(i).

Even setting the *In re Krohn* decision aside, the Debtors' position, that their ineligibility for Chapter 13 relief qualifies as a 'special circumstance,' has a more inherent flaw. This flaw arises because the Debtors have a bankruptcy option available: they can seek relief under Chapter 11 of the Bankruptcy Code.

The Bankruptcy Code, in fact, specifically envisions that debtors, when faced with a motion to dismiss under § 707(b), may need to convert to a case under Chapter 11, as opposed to Chapter 13, with § 707(b)(1) providing, "the court . . . may dismiss a case filed by an individual debtor under this chapter . . ., or, with the debtor's consent, convert such a case to a case under *chapter 11* or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter." (emphasis added). It is also noted that, while Chapter 11 undoubtably carries with it more administrative costs, it may provide a debtor, especially those with large amounts of debt, advantages over a Chapter 13. For example, in a Chapter 11, a plan may be longer than five years.

Page 12

In re: Gregory/Jennifer Burggraf
Case No. 10-32297

## CONCLUSION

In conclusion, the Court cannot find that, as applied to 11 U.S.C. § 707(b)(2)(B), "special circumstances," exist in this case which would justify the allowance by the Debtors of an additional expense when calculating their disposable income under the 'means test.' As such, the Debtors have not rebutted the presumption of abuse which, pursuant to 11 U.S.C. § 707(b)(2), arises in their case. Consistent, therefore, with 11 U.S.C. § 707(b)(1), the Motion of the United States Trustee to Dismiss will be Granted.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of both parties, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion of the United States Trustee to Dismiss, be, and is hereby, GRANTED.

***IT IS FURTHER ORDERED*** that this case, as filed by the Debtors, Gregory and Jennifer Burggraf, be, and is hereby, DISMISSED.

Dated: August 9, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 13

# CERTIFICATE OF SERVICE

Copies were mailed this 9th day of August, 2010 to:

Gregory Burggraf
396 Kilbury Road
Marion, OH 43302

Jennifer Marie Burggraf
396 Kilbury Road
Marion, OH 43302

Larry N Heiser
495 S State St
Marion, OH 43302

William L Swope
221 South Main St
Findlay, OH 45840

Dean Wyman
Office of the US Trustee
201 Superior Ave, #441
Cleveland, Oh 44114


                                        /s/Diana Hernandez
                                  Deputy Clerk, U.S. Bankruptcy Court